Thank you, your honors. Good morning. May it please the court. Devin Burstein on behalf of Mr. Licea, and with me is Gary Burcham on behalf of Mr. Morales. Your honor, with the, with your honors, with the court's permission, I intend to address the Title III issues. Mr. Burcham will address Agent Hugey's testimony, the 701 and 702 issues. We'll endeavor both to go about five, six minutes and save the remainder if there is any for rebuttal. Your honors, the September wiretap application failed to establish necessity. Specifically, the application omitted critical information about the success of traditional investigative techniques against Mauricio and his brothers. Now, when properly considered, these omitted facts do two things. First, they demonstrate that the September wiretap application did not contain the requisite full and complete statement as to whether or not other investigative procedures have been tried and failed or would be reasonably unlikely to succeed. The omissions further demonstrate that the wiretap was not strictly necessary. Counsel, you didn't put these in your application, did you? Excuse me, your honor? When you filed, the five through eight is the ones that you're concerned with. Those were filed with respect to August. They were not repeated with respect to September. Trial counsel, trial counsel did not repeat those specific allegations with So, are you conceding error on the part of counsel? Perhaps, your honor, but I think what we're looking at is something Well, how could it be perhaps? You're telling us that the district judge should have noticed this, but counsel shouldn't be? Well, the district court, the reason I said perhaps, your honor, is because the district court did, in fact, notice it. If we look at what the district court actually said Well, the district court was well aware of these allegations because she dealt with them. Correct. And therein lies the point. Right. But counsel, and I understand that you were not trial counsel, but trial counsel made these allegations with respect to August and did not make them with respect to either the September or the October application. And there were allegations that were made with respect to previous affidavits that were repeated and where you said, please incorporate this in the September application. You did not do that with respect to five through eight. Right, your honor. Okay. So was that error on the part of counsel? Yes, the counsel should have done that. But to follow up on your honor's question, counsel should have perhaps, should have, forget perhaps, should have stated, I'm reincorporating five through eight. But it's implicit in the sense that if you look at the September application, which we know the district court did, the same omissions are there. I mean, it's plain as day. So yes, that's. But it's not, why is it as plain that these are, that these are omissions? They also would have been omissions in the October application. They didn't do that either, right? Correct. Okay. Now why are allegations regarding people, regarding Mauricio and Valente at a time when they were not targets. Exactly. In, in July and early August. Why is that relevant all of a sudden to September? Because, and that's exactly what the district court says, your honor. Because by September, Mauricio is a target. And we know that those omissions are in the September affidavit. Right. But why are they omissions if they relate to a time when the government did not have them as a target? I understand your honor's questions. They are. When, when, when they're filed, when the application is filed in August, I think it was August 9th, was the wiretap allegation. Those allegations are, I mean, the, the contact with Valente and Mauricio was really fresh. Some of those were just days before that application. Now that application has to be renewed every month. So in September, why would the government, why would the government have to include something that related back to end of July, early August at a time when these, when Mauricio and Valente were not targets of their investigation? Oh, your honor, because those are critical facts as to necessity. Let's take an example. I, government agent, have a GPS warrant that allows me to track Mauricio in real time. He is now a target of my investigation. Surely a district judge. Yeah. But that warrant had, that warrant was issued by a state judge, right? The GPS warrant. And it had already expired. But the ability to do those things, the ability to track him at Farmer's Boy, the ability to do, to... Well, Farmer's Boy, the district judge said was not material. The ability to, they knew, here's one that is undisputable. They know Mauricio's address. He is a target. At the time of the September application, they know his address. They do not set up poll cameras. They do not do trash searches. They do not set up physical surveillance outside of his house, but for one time. This is a target of the investigation, that they don't take any measures to conduct traditional investigative techniques against. So certainly all of those things come into play as the September application. And if I could just quote what the district court said, at ER 741, the amount of information at the government's disposal at the time of this affidavit included data from GPS warrant for Mauricio and the exact date, time and location of the Farmer's Boy's retrieval. It would seem that there were many fruitful, cost-effective alternatives available to the government that went unexplored. And then the district court continues. And while we agree with, disagree with the district court's conclusion, the findings at ER 747, one of the goals of the investigation was to identify stash houses. And the government believed Mauricio ran one. So the government was required to identify and try or say why they could not try normal investigative procedures as to him. Mauricio was identified in a target in both the September 7th and October 26th affidavits. So, and this is the district court's words. Here's the key. So the government's failure to even discuss possible techniques as to him is especially hard to excuse in those affidavits. That's the September affidavit. Counsel, Judge Gould, if I could interject a question. I might be missing something, but in terms of the Title III necessity requirement, the question I have in my mind is, did the application state adequate assertions, even though some may have been conclusory, so that on its face, the application showed necessity? Can subject, putting aside whether there should be, there's a substantial showing that some assertion is made. No, you're wrong. Flawlessly or falsely? The answer is no, for two reasons. So the first reason is what I've just described in terms of September. We know that Mauricio is a target, yet there is no discussion within the four corners of the affidavit as to traditional investigative techniques about him in the sense of the government, the affidavit essentially concedes in its silence that there were no poll cameras, no trash searches, no IRS records checks, none of that as to his face. Mauricio is a target, yet the government doesn't describe in the affidavit the normal investigative procedures as to Mauricio. The second reason, Your Honor — I'm sorry. Does Your Honor have a question? Go ahead. I have a question. The second reason, Your Honor, is the omissions, which then we know about and have to be added in. So when we take those, either one should result in a failure to establish necessity, but certainly when they're both combined, the fact that there were no traditional investigative techniques tried in the categories I've just described, such as poll cameras and the others, and the omissions about what the government could do and just simply didn't do, those combined to eviscerate any claim of necessity. Okay, so my follow-up question, I guess, was this. Is there a paragraph in the application or two that say it was necessary to do a wiretap? Because they're looking at a conspiracy. They want to know everyone involved. Right. Yes. And that's what — but this Court has already said multiple times that the fact that any traditional technique can't give you all of the members of a conspiracy is not enough for necessity, because that's inherent in every wiretap application. And I see I'm cutting into my colleague's time, but I'll just say this, statute. The presumption against wiretapping is that this is not supposed to be something easy for the government to do. This is supposed to be, if not the last resort, it's one of the last resorts. And here we have a situation where, as to my client, and really my colleague's client, but certainly as to my client, they didn't do the legwork. And when they could have done the legwork, for example, farmers, boy, they don't do the legwork. So here we don't have necessity. Unless the Court has questions about — Well, I have a question about how you're getting to this analysis in the first place. There was a district court judge. There was motions that were filed. They didn't include 5 through 8. The district court judge said, I'm not considering that because that wasn't part of the application. And then later on, based on And the judge said, no, you had your chance. And it would — are we now reviewing that for an abuse of discretion or are we reviewing that decision de novo? So here's the problem, a little bit, of what happened. Those — the district court's decision not to review those was saying, I'm not going to grant a Franks hearing. But that doesn't matter because the district court and this Court, you don't need a Franks hearing. The question is de novo. This Court sits de novo and says, does the application contain the complete and statement of necessity? That's a de novo finding. Franks is a — I don't understand all the focus on Franks, to be frank, because the purpose of Franks is to decide whether omissions are reckless or intentional. That's inconsequential in the Title III context. Suppression is the remedy. Whether or not there was good faith, bad faith, recklessness, negligence, it doesn't matter. So this Court has been very clear. Well, it matters to us because we need to figure out procedurally how we get to your question. And the answer is, this Court sits de novo. The case law says we review independently whether the affidavit contained a complete statement as to necessity. Only after this Court does that de novo does it then review for abuse of discretion the ultimate finding of necessity. So are you saying we don't need to decide whether or not you were entitled to a Franks hearing or not? Definitely. Okay. And you would concede that you weren't entitled to a Franks hearing? I don't know that I need to concede it. It's inconsequential. Okay. So then we're just reviewing as a motion to suppress, any other motion to suppress? We are looking at what was in the face of the affidavit and then what evidence came up to show the omissions. And you're looking at those two things and saying, was there necessity? If first you're looking at the application, and I'm sorry to Mr. Burcham here. I will make sure that Mr. Burcham has his time. Thank you, Your Honor. I appreciate that very much. So the first thing we're doing is we're looking at the four corners of the application. And we're saying, does this – is this a complete statement as to Mauricio? Because under Carniero, we know that it needs to be as to each conspirator. So we're saying, is it complete? And the answer to that is just no, because the poll camera, all of that stuff is not. And then we're looking at the totality of the evidence, which includes the omissions, and we're saying, did the district court abuse its discretion considering what it knew, that is, the reviewing judge, in finding necessity? Did it, considering both the failure to state against Mauricio in the four corners, as well as what we learned at the hearing about the omissions? And this is not about the recklessness at the hearing. This is about documentary evidence. These are reports. We don't need a hearing to say that they could have followed him to Farmer's Boy. We have a report. We don't need a hearing about the DN – excuse me, about the ability to trace him on GPS. We have the warrant. We don't need a hearing for that. The hearing is inconsequential in terms of the materiality of it. We know these were material. With that, unless the Court has further questions, I'd submit. Okay. Thank you, Mr. Burstein. Thank you. Mr. Burcham. Your Honor, good morning. Gary Burcham on behalf of Appellant Vidal Lycia Morales. I'm going to talk about the 701-702 issue, which is a lot more straightforward, I think, than the Title III issues in this case. The government called Special Agent Hugey to testify in this trial as a lay 701 witness. They designated five expert witnesses. Hugey was not one of the expert witnesses. What should have been fairly limited testimony by Hugey to interpret the ambiguous parts of the Title III calls that were just spoken about became really an avalanche of impermissible opinion testimony that spanned the trial from the very beginning to the very end. We've argued that it was inadmissible under 701 and 702. The government said it never crossed the line to 702 evidence. Even if we assume the government's right that this was always 701 lay evidence, it was still inadmissible and improper for a couple of reasons. First of all, I think most evident is the fact that so much of Hugey's testimony concerned plain language statements. The case law of this court is crystal clear that if you're going to have a law enforcement witness testify as to ambiguities in recorded statements, it has to be ambiguous language and cannot be something that was within the clear and common knowledge of the jury. That's from what Hugey did throughout his testimony. The government concedes error as to the question about what did sheriffs mean, and Hugey says, well, sheriffs mean sheriffs. But there's so many more examples that are similar to that. I'll give the court a couple. On the first day of testimony, in a call, Luis says to Valentin, okay, are you tracking the phone? Agent Hugey, what does that mean? Agent Hugey says, Luis is asking Valentin if he's tracking the phone. A couple pages later, page 38, Vidal tells Luis, I removed the radio there they had with the battery turned off. Agent Hugey, what does that mean? Vidal is telling Luis that he removed the radio that they had and took the battery out or turned the phone off. Four pages later, on the call, Luis asks Mauricio, did you track the little number I gave you? Agent Hugey, what does that mean? Luis is trying to track the phone. Time and time again during the testimony of Agent Hugey, he was asked to interpret plain language. And so you say, well, if it's plain language, why does it matter? The answer is the same as what's in the call, why does it matter? But that's the Reyes-Vera case. The Reyes-Vera case from this court said, if you have maybe one or two of those instances where someone's interpreting plain language, it probably doesn't matter because the language in the call is the same as what the agent says. But the panel in Reyes-Vera said, and I'll quote, plain language testimony cumulatively, however, may have encouraged the jury to defer to the agent's opinions instead of listening to the calls and reaching an independent judgment. And that's what we have in this case. We have Agent Hugey essentially taking the reins of the evidence and implying to the jury that they don't need to listen to the calls or review the transcripts. They should listen to my interpretation of what the call said. And that's not how it's supposed to work. Were objections made that these statements were plain? Lots of objections were made. Early on, primarily, I think at some point the defense counsel got the hint that the district court was interpreting 701 to essentially allow Hugey to say anything he wanted. And so, but early on, absolutely, objections were made by both defense counsel as to this line of testimony. I'm looking at the radio incident, and there is an objection there on the basis of foundation. Right. The objections were not always spot on. And then I went to the next one, and there was no objection made on the other one that you gave us about the girl. That's correct. So we would be reviewing that for plain error, right? Well, there's more than 20. There's more than 20 of these instances of what I call the interpretation of plain language. And several of them have objections. Several of them do not. But several of them do have objections. Exactly what we said in these briefs, no. But the gist of what the complaint was was made clear to the district court. And the district court essentially let the government use Agent Hugey as a conduit for its theory of the defense, spoon feed the theory of defense to the jury through the agent throughout trial, essentially giving the closing argument of the government as trial went on through Agent Hugey. And that's not how it's supposed to work. The jury is supposed to make those determinations. And it's our position that due to the amount of errors in this case, that that requires reversal. If the Court has no further questions, I'll submit. Okay. Thank you. Thank you, Mr. Berger. Ms. Corbett? Good morning, Your Honors. May it please the Court, Jennifer Corbett on behalf of the United States. As indicated early on by the defense counsel's arguments, the facts relating to the wiretap are somewhat convoluted in the procedural and factual background. So I want to review some of those just to illustrate why the wiretap was properly granted and also properly handled by both of the district judges that dealt with this issue. First, with respect to the procedural record, there were allegedly four defects in four affidavits that were raised by defendant below. They were eventually grouped and numbered, and some were repeated. And as Judge Bybee noted, the ones that are being discussed in this appeal are not ones that were repeated as to multiple affidavits. Counsel, if we thought that this was, if we thought this was a mistake and a mistake of counsel, is it proper for us to review this here at this point, or does we have to let this play out in habeas? I think it would play out in habeas, Your Honor. I think the mistake of counsel is only important if ultimately there's any materiality, and whether it was a proper strategic decision, those are the matters that would be before the Court on a habeas basis. Because the objections appear to be very, very complete, and they do incorporate arguments from one affidavit for another affidavit, but not with these objections later on. They do tell the district court, we want you to incorporate 5 through 8 for the September affidavit. They tell the court that, I think, at least twice. Yes. So it certainly was raised to the district court, and opposing counsel raises some very provocative points as to why 5 through 8, perhaps, should have been repeated for the September affidavit. They could have been, and they weren't. The government's position, I would submit, is that they weren't material, ultimately. And so whether it would arise in a habeas context or in this context, this Court can decide, with respect to 5 through 8, that because there's a lack of materiality, that it would be essentially irrelevant whether the defense counsel at the time, at trial, had raised them or not. And I, with respect to August, I don't see how it improves for September. But what about the others? Gladly, Your Honor. And I would just note, briefly, with respect to the farmer's boy, not only was it July 10th, but even just looking at that call, or the summary that was submitted by defense counsel, which was at Mauricio's record at 384, the call itself is between Mauricio and Gonzalo. The, at this point in the investigation, and even proceeding into August and September, the relationship of the various parties are unclear. And when you have this lack of clarity coupled with seeing that the investigation is taking, is the, I'm sorry, the wiretapping is being sought not with respect to Mauricio. And this is a very, very important point. At no time did the government seek to intercept a device being used by Mauricio. If we did, I would submit, we'd be in a very The fact remains, the government, at no time, including in the September affidavit, was not seeking to intercept a device being used by Mauricio. How about Valente? Valente was even more, even less was known about him. In fact, he was not even named as a target subject with respect to the September affidavit. Very little was known about his role. Although at a later point in time, the agents come to realize that he is also muerto, this was not known to the agents. He was believed to be a fringe player at that time, and his connections were even weaker with respect to the persons using the devices that were sought to be of materiality. Whether the certain investigative techniques that were undertaken were omitted, and whether the government should also have taken additional techniques with respect to Valente and Mauricio, have to be examined in the context, first, which phones is the government seeking to intercept? And then also, what is known at the time of that affidavit regarding who these targets are, and what their possible role is with respect to the co-conspirators that are being looked at in those affidavits? What about the argument, though, that there should be like an incorporation of what the district court judge found into the September affidavit? I think if you had the same affiant, you might have a stronger argument. But I think once you get into a different affiant, and an affiant who was by the accounts, for example, with respect to Farmer's Boy, that affiant was not known to be a part of that decision to not, in July, look to try to track or send out people to find this Farmer's Boy and try to track this Mauricio. Did that affiant incorporate, by reference, the prior affidavit that was written by, was it Davila? Yes. And if Davila was bad in what she did, why doesn't that then transmit into the subsequent affidavit, as was found by the district court and argued by defense? I think it depends on the context that you're discussing. So if you're in a Frank's context, I think the answer is that the recklessness or the mens rea, if you will, of the agent, from one agent to another, I don't think you can just impute that and say because it was reckless for this agent, based on her testimony at the Frank's hearing, that therefore, now every subsequent affiant is going to be also reckless. And essentially, the judge found initially that the affidavit allegations were going to be examined separately. And that is especially important when you're looking at the difference between the August affidavit and the September affidavit. But it even goes back to July as well. For necessity, I think it's less of a factor, but you can still consider why the earlier affiant, who did have involvement, first-person involvement with those decisions and or omissions, what the reasons were. And we know those reasons in this case because the supplemental affidavit that was submitted, and this is part of the government's excerpts of record, Agent Davila discussed in the context of the August affidavit why she did not view it to be important to attempt to follow Mauricio with respect to the Farmer's Boy incident, and why the GPS and surveillance on Mauricio closer in time to August 2nd was not, why she believed that not to be fruitful and not material as to what the investigation found. And that later surveillance ultimately did not help because it was not until the Customs and Border Protection personnel, until that information about the border seizure was transmitted to the investigating agents, they were not aware that in fact a car had been sent to secondary and those couriers had been found. So even though they conducted on August 2nd some surveillance and they reported what they saw, they also reported incidentally the counter surveillance, and to the extent that's an issue, I would refer the court to the excerpts of record and Mauricio's excerpts at 414 and 415. And that is the original surveillance notes, and these were submitted below by defense regarding this surveillance that took place on August 2nd. But what they saw was two males meeting, two males drove from place to place, the driver made a number of unusual moves, and they talked on the phone and or they looked as if they were manipulating phones, but the agents didn't see a drug transaction. They had no reason at that point, even with the interceptions going on, the contemporaneous interceptions, they did not see a drug transaction, they did not see a meeting that clearly, that made clear that those two individuals in the United States were involved in what was being discussed, involved in a drug transaction, and involved in surveillance, and ultimately the border bust that leads to the seizures. So the context of, in this case, what was going on in September and what went on in September demonstrates that the omitted materials and the omitted investigative steps were ultimately not material, and that is always going to be important because the affidavit is always going to be viewed in necessity in the context of those devices that the government is seeking to intercept. Your Honor, I'm... Counsel, if I could interject a question. Yes. So I plan to go back to the record after argument and look at your applications, but is there a particular language in the applications upon necessity to which you direct my attention? Yes, Your Honor, there is. In the September affidavit, in addition to the language describing the goals of the investigation, the affidavit also includes in the necessity section a paragraph explaining why... What page are you on? Oh, I apologize, Your Honor. It is 274 in Mauricio's excerpts of record, and this is for the September affidavit, paragraph number 63. The discussion specifically refers to, for example, tunnels not having been located even though they had previously been discussed in intercepted conversations. And in addition, the affidavit describes the need for interception because the agents have been unable to... And this is... I'm sorry, I'm going ahead to the next page, Your Honor. Mauricio's excerpts of record at 275. The agent says the following. We have still not located the tunnels between the U.S. and Mexico that Morales discusses shipping narcotics through or identified Morales's associates who coordinate the drug shipments across the border, such as Oscar or Lily, so continued interception of target telephone 16 is necessary. And whose telephone was number 16? 16 was Luis's telephone. Okay. And, you know, I apologize for... So there's no request here for any target telephone for either Mauricio or Valente? That's correct, Your Honor. 16, target telephone 16 was being used by Luis, who was believed to be in Tijuana, Mexico. With respect to target telephone 19, interception was being sought for that telephone, and that telephone was being used by Vidal. So going on, if I may, to paragraph 64, also on ER 275. Paragraph 64 discusses some of the reasons that the agent submits that the interception of target telephone 19 is necessary. And he provides a number of reasons. I'll just highlight one of them. It's approximately seven lines down. Interception of Vidal's target telephone 19 is needed because Vidal helps various narcotics suppliers transport narcotics into the U.S. And there's no indication, Your Honors, that either Mauricio or Valente were involved in any way with Vidal's narcotics suppliers. Valente, to the extent anything was known about his role at that time, it would be that he was someone who was in the United States and was involved in transportation, perhaps. Mauricio was also in the United States and, according to the September affidavit, was believed to operate stash houses. So what was known about their roles indicated and was appropriately set forth with respect to necessity for the individuals whose telephones were being sought to intercept it. Two persons in Mexico, Vidal and Luis, and two persons who were believed to be involved on the Mexico side with sending and supplying narcotics that were then being crossed over the border into the United States. Did I answer Your Honor's question? Yes. So I just want to make sure. Does Mauricio's name appear in the September affidavit? It does, Your Honor. And, in fact, it's discussed, although it's discussed in the probable cause section, I would submit that the information about him actually supports that it was not material that investigative techniques either were used or could have been used but were not used with respect to him. So were they picking up conversations on the, where the target telephones, was Mauricio being picked up on these conversations? He was, Your Honor. And, in some circumstances, it was known that he was or he was being identified as Mauricio. There were times that came up later on where he was being identified as Mingo. It was unclear at all times whether that was the same person. But certainly the September affidavit sets forth conversations between, I believe it's Vidal and Luis who are talking about what Mauricio was or was not doing and what Valente was or was not doing. And the conversations are set forth with respect to target telephone 19 and August 2nd, which ultimately becomes what is able to be linked later with the border seizure. But also there are conversations establishing probable cause for target telephone 16 in which Luis has a conversation with Mauricio. But they indicate that Mauricio is not the person who will be driving, who will be actually driving drugs across the border, although he may be receiving those. Did I answer Your Honor's question? Yes. Now, is there any discussion in here of efforts they had taken against Mauricio or Valente? No, there is not. And is that because it wasn't relevant or is that because the agent didn't think that it was necessary? I don't – I can't answer that with respect to the particular affiant because the Franks hearing was not granted. And, again, we're in sort of – This was a different fiant than the July – August and October. That's correct, Your Honor. Agent Huge, the allegations that were made as to Frank's hearing as to him were found by the district court not to merit a Franks hearing. And those particular allegations, the court's decision on that matter is not being challenged on appeal. What's being raised now is essentially that five allegations that were numbered five through eight should have been applied to him, but were not. We don't know why Agent Huge did not include those. He incorporated, obviously, the prior affidavits, but he could not then – I think we're in a strange situation where we have an omission or a failure to conduct as opposed to a misstatement. If we were talking about a misstatement, it might be a different thing to say, well, you adopted the misstatement. Here it's a lack of information. So the way the record exists, we can't speak to Agent Huge's motivations or reasons for that, or even his knowledge, frankly. Your Honor, I – Counsel, you're now well over your time. Yes. I realize that, and I apologize for not noticing that. I saw the time and thought it was time remaining. If I could answer questions with respect to the expert matter, which I know have been raised and sort of more substantially brief than the custody issue. I would just urge the Court to note the particular context of this expert testimony. First – or claim of expert testimony. Counsel, I think we're aware of it. Okay. Your Honor, I would just note that the – that in addition to the defense not challenging these matters, the government had a drug trafficking expert that was a separate expert and that the defense in this case was identity, was not meaning what was being said in the calls. So I would just note that we do dispute the standard set forth in the reply brief by Mauricio regarding harmlessness, and that we're talking here a non-constitutional error. I would be remiss if I did not raise that. Okay. Thank you, Your Honor. Thank you. Mr. Burstein? Your Honor, I'd like to start, if the Court pleases, at ER 871. It says – Tell me what the document is. This is the transcript from the initial suppression motion hearing. I think the September affidavit, the analysis is the same with respect to the August affidavit. The September affidavit, they knew. The agents knew even more based on the intercepted calls that happened between August and September. And so their failure to discuss any normal investigative procedures taken or considered against Mauricio Licea or Valentin Morales is equally fatal to that affidavit as it was to the August 9th affidavit. That's before the district court has ruled. This is at the outset of the hearing. And we have to remember that the suppression motion challenged all four of the affidavits. Your Honor is respectfully – Yeah, it's a pretty thin – I mean, it's preserved, but it's actually pretty thin. I understand. But, you know, I would ask Your Honor to focus on the first part of Your Honor's sentence. It's preserved. And here's what I would suggest to the Court. My colleague's statement from the government should – Counsel, the other thing about that. So this is – you know, counsel says I'm going to touch briefly on this, raises the question, and then explains the only reason we did is because of the proximity of time between those admissions and the August 9th affidavit. There's an explanation from counsel to the court as to why they were included in August and why they might have been omitted from September. But then once he realizes, he raises it. And then they raise it again in a written motion, and they ask him to consider it. And, Your Honor, even beyond that, respectfully what I would suggest from my colleague's argument, Your Honor asked directly, was there any discussion of traditional investigative techniques against Mauricio? And Your Honor – and the government candidly answered no. That's it. That should be the whole description, because what we're looking at objectively from my client's perspective, he's picked up on the wires. The government told you that. He's named as a target. The government told you that. And then they just told you. There's no discussion as necessity for him. You make a powerful argument, counsel, and I just want to make sure that I understand it, because the argument that you're making doesn't have anything to do with 5-8. You don't need 5-8 to make the argument that you're making now. Is that correct? Correct. Your argument is, I win. I don't need 5-8. It's the flip side of the coin. They have ignored necessity for Mauricio to their peril, and they've omitted what they should have added. And that's what we see time and time again in this Court's case law, is that they fail to do the traditional investigative techniques, and then they don't tell the Court about what they did that actually helps. So that's what I was trying to do in answer to Judge Gould's question with the two-part answer, Your Honor, is saying, look, the government has essentially conceded just now that there's no necessity showing objectively. That's the first prong of this Court's test. We win. The Court doesn't have to look at 5-8. But if the Court does look at 5-8 and what the district court said about it, then we win, too, because the district court said the one quote I didn't give this Court is at ER 748, and I'll end with that unless the Court has questions. Physical surveillance of the purported stash house operator Mauricio would likely have satisfied the investigative goal of obtaining logistical details of transactions within the U.S. and the location of stash houses. The government didn't do that either, and it's not that they just didn't do it. They didn't tell the district court. And remember, the point is there's a presumption against wiretapping. And in this case, the government didn't meet their necessity showing, and we'd ask the Court to vacate the convictions. Thank you so much, Your Honor. Thank you, counsel. We thank all counsel for the argument. And with that, the Court has completed the calendar for the day, and we stand adjourned. Thank you, Your Honor. I'll see you Thursday, Your Honor. Okay.
judges: Gould, Bybee, Hernandez